UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **YVONNE GOODE,** | Civ. No. 2:11-cv-06960 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **NEW JERSEY DEPARTMENT OF CORRECTIONS,** *et al.*, | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Yvonne Goode filed this workplace discrimination action against Defendants New Jersey Department of Corrections ("DOC"), Northern State Prison, Gary Lanigan, Paul Lagana, Jvehghn Brown, Victoria Kuhn, and Hatha Baraka, asserting various federal and state law claims. The Amended Complaint alleges that Defendants subjected her to name-calling and wrongfully punished her for insubordination due to her race and gender. It further alleges that after Plaintiff complained about the alleged mistreatment, Defendants retaliated by wrongfully disseminating her private information. The Court will refer to Defendants Lanigan, Lagana, Brown, Kuhn, and Baraka collectively as the "Individual Defendants."

This matter comes before the Court on Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion is **GRANTED**.

I.  BACKGROUND

The following facts are undisputed. The DOC operates Northern State Prison, which is located in Newark, New Jersey. Plaintiff – an African American female – began working at Northern State Prison on June 4, 2000 and has been a Senior Corrections Officer since 2001. Defendant Lanigan is the Commissioner of the DOC. Defendant Lagana was the Administrator of Northern State Prison from August 2010 through December 2013. Defendant Brown is a Corrections Sergeant at Northern State Prison. Defendant Kuhn is the Director of the DOC's Equal Employment Division ("EED"). Defendant Baraka is the former Corrections Chief at Northern State Prison.

1

The August 10, 2010 Incident and Related Proceedings

On August 10, 2010, Defendant Brown and his team – which included Plaintiff – responded to a Code 33 at Northern State Prison. D.'s R. 56.1 Stmt. ("D.'s Stmt.") ¶¶ 10, 12, ECF No. 55-2. A Code 33 indicates inmate fighting, and Brown and his team were responsible for securing the yard while the fight was contained. D.'s Stmt. ¶ 10, 12. Defendant Brown testified that, after his team secured the yard, he instructed them to submit reports documenting their actions during the Code. Certification of Ashwath S. Trasi, dated August 4, 2014 ("First Trasi Cert.") Ex. E 29:21-23, ECF No. 55.9. Plaintiff testified that Brown did not ask her to write a report, but admitted that departmental policy requires all officers involved in a Code 33 to write a report. Certification of Luretha M. Stribling ("Stribling Cert.") Ex. 3 15:23-24; 21:1-13, ECF No. 59.

Later that day, Sergeant Brown approached Plaintiff while she was having dinner in the officers' dining room and asked her why she had not filled out a report. D.'s Stmt. ¶ 18; Pl.'s Resp. to D.'s R. 56.1 Stmt. ("Pl.'s Resp. Stmt.") ¶ 18, ECF No. 58-20. The parties disagree about the tone of the conversation – Plaintiff testified that Brown started yelling at her about the report. Stribling Cert. Ex. 3 21:3-5. In response, Plaintiff asked, "What report?" D.'s Stmt. ¶ 19; Pl.'s Resp. Stmt. ¶ 19. She also told Brown that no one told her to write a report and that he should not speak to her that way front of others. D.'s Stmt. ¶ 19; Pl.'s Resp. Stmt. ¶ 19. Plaintiff then told Brown to "calm down" and said that if he needed to speak to her, he should "take [her] outside." D.'s Stmt. ¶ 20; Pl.'s Resp. Stmt. ¶ 19. Brown then instructed Plaintiff to step outside the dining room to discuss the report. D.'s Stmt. ¶ 21; Pl.'s Resp. Stmt. ¶ 21. Plaintiff responded, "Right now I'm eating." D.'s Stmt. ¶¶ 22-23; Pl.'s Resp. Stmt. ¶¶ 22-23. She did not step outside to speak with Brown. Stribling Cert. Ex 3 21:3-22:10.

Brown filed a Special Custody Report, dated August 10, 2010, regarding the incident. D.'s Stmt. ¶ 24; Pl.'s Resp. Stmt. ¶ 24. In that report, Brown stated that Plaintiff became irate when he asked about her report and that she yelled and screamed at him. D.'s Stmt. ¶ 24; Pl.'s Resp. Stmt. ¶ 24. He further stated that Plaintiff refused to speak with him outside and demonstrated "flagrant insubordination." D.'s Stmt. ¶ 24; Pl.'s Resp. Stmt. ¶ 24. Defendant Stevens was assigned to investigate Plaintiff's insubordination. D.'s Stmt. ¶ 25; Pl.'s Resp. Stmt. ¶ 25. Stevens determined that Plaintiff's response to Brown's request to step outside was "clear insubordination." D.'s Stmt. ¶ 27; Pl.'s Resp. Stmt. ¶ 27.

As a result of the August 10, 2010 incident, Plaintiff received a Preliminary Notice of Disciplinary Action from the DOC sanctioning her with a 120-day suspension. Stribling Cert. Ex. 6. Defendants maintain that the length of Plaintiff's suspension was calculated based on her prior disciplinary record. D.'s Stmt. ¶ 31. Her record contains several prior incidents, including a 90-day suspension in 2004 for providing a false statement to the Superior Court of New Jersey, Essex County. D.'s Stmt. ¶ 32; Pl.'s Stmt. ¶ 32.

Plaintiff appealed the Preliminary Notice, and a Disciplinary Appeal Proceeding was held on October 14, 2014.  D.'s Stmt. ¶ 33; Pl.'s Resp. Stmt. ¶ 33.  Based on the testimony presented at the hearing, the Hearing Officer sustained the insubordination charge against Plaintiff.  D.'s Stmt. ¶ 35; Pl.'s Resp. Stmt. ¶ 35.  He also sustained the 120-suspension based on Plaintiff's prior 90-day suspension and the DOC's progressive discipline policy.  D.'s Stmt. ¶ 35; Pl.'s Resp. Stmt. ¶ 35.  The DOC then issued a Final Notice of Disciplinary Action, dated October 19, 2010, to Plaintiff.  D.'s Stmt. ¶ 36; Pl.'s Resp. Stmt. ¶ 36.

The November 7, 2010 Settlement Agreement

On October 14, 2010, after Plaintiff's hearing had concluded, Plaintiff met with her union representative and union officers.  D.'s Stmt. ¶ 37; Pl.'s Resp. Stmt. ¶ 37.  They told her that Defendant Lagana was willing to enter into a settlement agreement with her to reduce her suspension.  D.'s Stmt. ¶ 38; Pl.'s Resp. Stmt. ¶ 38.  Plaintiff testified that her union representative explained that under the agreement, she would agree not to appeal her suspension and, in exchange, her suspension would be reduced to 45 days.  D.'s Stmt. ¶ 39; Pl.'s Resp. Stmt. ¶ 39.  Plaintiff also testified that her union representative told her that if she chose to appeal, she would be forced to immediately begin serving her 120-day suspension without pay.  D.'s Stmt. ¶ 40; Pl.'s Resp. Stmt. ¶ 40.

On November 7, 2010, Plaintiff signed a settlement agreement with Northern State Prison (the "Settlement Agreement").  D.'s Stmt. ¶ 41; Pl.'s Resp. Stmt. ¶ 41.  The Settlement Agreement reduced her suspension to 45 days.  D.'s Stmt. ¶ 41; Pl.'s Resp. Stmt. ¶ 41.  Further, she would be required to serve only a 10-day suspension, with the other 35 days remaining for record-keeping purposes.  D.'s Stmt. ¶ 41; Pl.'s Resp. Stmt. ¶ 41.  In exchange, Plaintiff gave up certain legal rights. Specifically, Section 6 of the Settlement Agreement states:

> Appellant waives all claims, suits or actions, whether known, unknown, vested or contingent, civil, criminal, or administrative in law or equity against the State of New Jersey, the New Jersey Department of Corrections, their employees, agents, or assigns, including but not limited to those which have been or could have been made or prosecuted on account of any conduct of any party occurring at any time with respect to the events, information and disputes giving rise to this action up to the date of this agreement, including, but not limited to all claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, the Family and Medical Leave Act, the New Jersey Law Against Discrimination and Conscientious Employee Protection Act, and any contract express or implied.

First Trasi Cert. Ex. K § 6, ECF No. 55-17. Plaintiff's union representative also signed the Settlement Agreement. D.'s Stmt. ¶ 42; Pl.'s Resp. Stmt. ¶ 42. Additionally, Plaintiff executed a certification confirming her understanding that the Settlement Agreement terminated "all claims and further appeal against the State of New Jersey Department of Corrections." D.'s Stmt. ¶ 43; Pl.'s Resp. Stmt. ¶ 43. Per the Settlement Agreement, Plaintiff served only 10 suspension days. D.'s Stmt. ¶ 45; Pl.'s Resp. Stmt. ¶ 45.

### Plaintiff's Claim Notice

On November 20, 2010, Plaintiff filed a Notice of Tort Claim (the "Claim Notice"). D.'s Stmt. ¶ 46; Pl.'s Resp. Stmt. ¶ 46. The Claim Notice states that Plaintiff "was subjected to excessive and unwarranted punishment and was given excess time off from work per an alleged charge of insubordination" and has been "subjected to mental abuse, discrimination, hostile work environment, and loss of wages." D.'s Stmt. ¶ 47; Pl.'s Resp. Stmt. ¶ 47. In her Claim Notice, Plaintiff provided her home address, social security number, birth date, and telephone number. D.'s Stmt. ¶ 48; Pl.'s Resp. Stmt. ¶ 48.

In a January 10, 2010 letter, Defendant Kuhn, the EED Director, sent a Notice to Preserve Documents to individuals within the Northern State Prison. D.'s Stmt. ¶ 49; Pl.'s Resp. Stmt. ¶ 49. The Claim Notice was attached to the Notice to Preserve Documents. First Trasi Cert. Ex F 24:4-10. The Notice to Preserve Documents is addressed to seven individuals: Defendant Lagana, Litigation Liaison Mario Viera, Human Resource Manager LaShanta Evans, Defendant Brown, Officer Tashana Baldwin, Officer Dennis Robinson, and Officer Omar Martin. Stribling Cert. Ex. 11. Kuhn testified that the EED office disseminated, pursuant to office policy, copies of the Claim Notice to individuals at Northern State Prison with knowledge of the issues raised in the Claim Notice. D.'s Stmt. ¶¶ 52-53; Pl.'s Resp. Stmt. ¶¶ 52-53. Plaintiff argues that disseminating her Claim Notice violated the DOC's Identify Theft Prevention Policy (the "Identity Theft Policy") and Employee Personnel Records: Employee Mailing Addresses Policy (the "Employee Records Policy").

### Plaintiff's Allegations of Gender Discrimination

Plaintiff claims that Defendant Brown spoke to female officers differently than male officers and that he was disrespectful to her on August 10, 2010 because she is a woman. D.'s Stmt. ¶ 64; Pl.'s Resp. Stmt. ¶ 64. Plaintiff testified that she has heard Brown use the word "bitches" and refer to his ex-wife as a "bitch." D.'s Stmt. ¶¶ 65, 67; Pl.'s Resp. Stmt. ¶¶ 65, 67. However, she admits that Brown has never called her a "bitch." D.'s Stmt. ¶ 66; Pl.'s Resp. Stmt. ¶ 66. Plaintiff also testified that she overheard Brown refer to another female officer as a "bitch" while he was speaking with two other officers. D.'s Stmt. ¶ 70; Pl.'s Resp. Stmt. ¶ 70. Plaintiff admitted that other than that one occasion, she has never heard Brown refer to a female officer as a "bitch." D.'s

4

Stmt. ¶ 72; Pl.'s Resp. Stmt. ¶ 72. She also admitted that she has regularly heard profanities used at Northern State Prison. D.'s Stmt. ¶ 73; Pl.'s Resp. Stmt. ¶ 73.

According to Plaintiff, Brown filled in as the General Assignment Sergeant two or three times per month. D.'s Stmt. ¶ 76; Pl.'s Resp. Stmt. ¶ 76. Plaintiff also testified that when Brown was the General Assignment Sergeant, he would assign women to "walk around the prison," while males were assigned to be seated in the Education area. D.'s Stmt. ¶ 75; Pl.'s Resp. Stmt. ¶ 75. Plaintiff admitted that the officers who remained seated were part of a five-person emergency response team. D.'s Stmt. ¶ 77; Pl.'s Resp. Stmt. ¶ 77. She also admitted that although she has never been assigned to the response team, women have been assigned to that team. D.'s Stmt. ¶ 78; Pl.'s Resp. Stmt. ¶ 78. Further, she testified that she has never requested to be assigned to the response team. D.'s Stmt. ¶ 79; Pl.'s Resp. Stmt. ¶ 79. Plaintiff, who stated that she could see what the officers in the response team were doing while passing through the Education area, testified that the male officers assigned to that team "do absolutely nothing" while seated in the Education area. D.'s Stmt. ¶¶ 80-81; Pl.'s Resp. Stmt. ¶¶ 80-81.

Finally, Plaintiff maintains that she received harsher discipline for her insubordination offense than male corrections officers received for similar offenses. D.'s Stmt. ¶¶ 83-100; Pl.'s Resp. Stmt. ¶¶ 83-100.

### Plaintiff's Allegations of Race Discrimination

Plaintiff testified that she requested, but did not receive, training for a position in the Central Control Office. D.'s Stmt. ¶ 102; Pl.'s Resp. Stmt. ¶ 102. She further stated that Lieutenant Sabor told her that he preferred to have Latina female officers working in the Center Control Office. D.'s Stmt. ¶ 105; Pl.'s Resp. Stmt. ¶ 105. Plaintiff also testified that, on one occasion in 2009, she heard Sabor say "everybody know how I feel about my Latino women" to officers during a lineup. D.'s Stmt. ¶ 112; Pl.'s Resp. Stmt. ¶ 112. She testified that he said this after informing them that he had returned from a trip to Puerto Rico. D.'s Stmt. ¶ 112; Pl.'s Resp. Stmt. ¶ 112.

Plaintiff testified that she complained to her supervisors about Sabor, but admitted that she never told them that Sabor said he preferred working with Latina women. D.'s Stmt. ¶¶ 107-08; Pl.'s Resp. Stmt. ¶¶ 107-08. Plaintiff claims that Sabor had the authority to decide whether she would receive training for the Central Control position. D.'s Stmt. ¶ 109; Pl.'s Resp. Stmt. ¶ 109. However, Administrator Lagana testified that a screening committee, and not one single supervisor, determines who receives training for those positions. D.'s Stmt. ¶ 110; Pl.'s Resp. Stmt. ¶ 110. Plaintiff admitted that working in Central Control is not a promotion from her current position. D.'s Stmt. ¶ 111; Pl.'s Resp. Stmt. ¶ 111.

Plaintiff further testified that at Northern State Prison, African American officers are not given the opportunity to work for the Special Investigations Division ("SID").

D.'s Stmt. ¶ 114; Pl.'s Resp. Stmt. ¶ 114.  However, during her deposition, Plaintiff admitted that two African American females work in the SID.  Stribling Cert. Ex. 3 197:21-198:2.[1]  Plaintiff also admitted that she has never applied for a position with the SID.  D.'s Stmt. ¶ 116; Pl.'s Resp. Stmt. ¶ 116.  Instead, she stated that she knew African American female officers who wanted to work in the SID but were passed over for Latina officers.  D.'s Stmt. ¶ 116; Pl.'s Resp. Stmt. ¶ 116.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 1, 2011 and received a Right to Sue letter on December 21, 2011.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party.  *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).  A defendant is entitled to summary judgment on statute of limitations grounds where there is no genuine dispute of material fact as to when the limitations period began to run, and based on that accrual date the defendant is entitled to judgment as a matter of law.  *Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 304 (3d Cir. 2004); see also Fed. R. Civ. P. 56(a).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  *Id.*  The opposing party must do more than just rest upon mere allegations, general denials, or vague statements.

---

[1] Plaintiff's deposition reads as follows:

> Q. Have you known any black officers who have been in SID?
> A. Yes, I do.
> Q. Do you know any female officers who have been in SID?
> A. Two.
> Q. Are they both Hispanic?
> A. Two black.
> Q. Two black –
> A. Females that work in SID, uh-huh.

6

*Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Rather, to withstand a proper motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57.

### III. DISCUSSION

The Amended Complaint asserts the following claims:

(1) Count One: The New Jersey Conscientious Employee Protection Act ("CEPA");
(2) Count Two: Gender Discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New Jersey Law against Discrimination ("LAD");
(3) Count Three: Race Discrimination under Title VII and LAD;
(4) Count Four: Violation of 42 U.S.C. § 1981;
(5) Count Five: Violation of 42 U.S.C. § 1983;
(6) Count Six: Intentional Infliction of Emotional Distress;
(7) Count Seven: Negligent Infliction of Emotional Distress;
(8) Count Eight: Breach of the Identity Theft Policy;
(9) Count Nine: Breach of the Employee Records Policy;
(10) Count Ten: Violation of the New Jersey Civil Rights Act, N.J. Stat. Ann. 10:6–1 *et seq.* ("NJCRA"); and
(11) Count Eleven: Intentional Interference with Economic Advantage

Defendants move for summary judgment on all counts. The Court finds that Plaintiff waived her claims related to her suspension for insubordination under the Settlement Agreement. The Court further finds that Plaintiff failed produce evidence in support of her other claims under Title VII, Section 1981, or Section 1983. Accordingly, the Court will dismiss all federal claims against Defendants and will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

#### A. The Settlement Agreement

Defendants argue that, by entering into the Settlement Agreement, Plaintiff waived her claims for incidents that occurred on or before November 7, 2010. Plaintiff argues that that the Settlement Agreement is inapplicable to her claims. Plaintiff also argues that the Settlement Agreement is invalid because she signed it under economic duress. Specifically, she alleges that she felt "pressured" to accept the settlement offer, because she was "fearful of being out of work for 120 days without pay." Am. Compl. ¶ 19, ECF No. 3. The Court agrees with Defendants.

A "totality of circumstances" test governs the validity of a release in this context. *Mosley v. Bay Ship Mgmt., Inc.*, 174 F. Supp. 2d 192, 197 (D.N.J. 2000) (citing *Cirillo v.*

*Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988)). The relevant factors include, but are not limited to, the following:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known her rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the [a]greement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* "Economic pressure alone is not enough to constitute duress rendering an otherwise valid release void." *Id.* at 199 (internal quotations and citations omitted).

Here, the waiver in the Settlement Agreement satisfies the totality of the circumstances test. Plaintiff was provided with the terms of the Settlement Agreement on October 14, 2010 and did not sign it until November 7, 2010. This gave her over three weeks to deliberate and consult with an attorney. And while nothing in the record indicates that Plaintiff was encouraged to consult with counsel, the record also does not indicate that she was prohibited from doing so. Further, the waiver language in the Settlement Agreement is prominent and clearly identifies the rights being waived. *See Easton v. Bristol-Myers Squibb Co.*, 289 F. Supp. 2d 604, 610 (E.D. Pa. 2003). The release clearly states that "[A]ppellant waives all claims, suits or actions . . . against the State of New Jersey, the New Jersey Department of Corrections, their employees, agents, or assigns . . . ." The release then specifies that it includes, but is not limited to: (1) claims that "have been or could have been made or prosecuted on account of any conduct of any party occurring at any time with respect to the events, information and disputes giving rise to this action up to the date of this agreement;" and (2) "all claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, . . . the New Jersey Law Against Discrimination and Conscientious Employee Protection Act, and any contract express or implied." Additionally, Plaintiff signed a certification stating that she understood the terms of the Settlement Agreement and testified that she read and understood the release. *See* Stribling Cert. Ex. 3 84:13-18. Finally, Plaintiff's union representative was present at the time of execution and also signed the agreement. *See* Mosley, 174 F. Supp. 2d at 199 (enforcing a release where plaintiff's union representatives were present to assist him and the record contained no indication that plaintiff was prohibited from seeking the aid of counsel).

Further, Plaintiff has provided nothing indicating that she was under duress when she signed Settlement Agreement. While Plaintiff may have faced a tough economic choice, there is simply no evidence of a wrongful or illegal act that deprived her of her "unfettered will." *Campbell Soup Co. v. Desatnick*, 58 F. Supp. 2d 477, 492 (D.N.J.

1999) (quoting *Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc.*, 459 A.2d 1163, 1175 (N.J. 1983)) ("Under New Jersey law . . . "[a] party alleging economic distress must show that he has been the victim of a wrongful or illegal act or threat" that "deprive[d] the victim of his unfettered will."); *see also Sauter v. Fed. Home Loan Bank of New York*, No. 08-899, 2009 WL 2424689, at *9 (D.N.J. Aug. 5, 2009) (using New Jersey law to evaluate whether economic duress rendered a release of federal claims void). Moreover, under the terms of the Settlement Agreement, Plaintiff's 120-day suspension was reduced to 45 days, only 10 of which she had to serve. Plaintiff thus received adequate consideration in exchange for waiving her legal claims. *See Mosley*, 174 F. Supp. 2d at 199 (rejecting a claim of economic duress, because the plaintiff "received negotiated consideration for signing the release").

The Court finds that the release in the Settlement Agreement is valid. And under the terms of the Settlement Agreement, Plaintiff has waived all claims against Defendants for incidents that occurred on or before November 7, 2010. However, Defendants have shown only that the incidents related to Defendants suspension for insubordination occurred prior to that date. The Court will thus grant Defendant's motion for summary judgment on all federal law claims related to Plaintiff's suspension for insubordination. The Court will evaluate Plaintiff's federal claims based on all other incidents as if the Settlement Agreement does not apply.

### B. Title VII Claims

Plaintiff asserts claims under Title VII based on gender discrimination, race discrimination, and hostile work environment. Given the Settlement Agreement, Plaintiff can assert claims under Title VII based on only the following allegations: (1) Brown's use the word "bitch" in front of Plaintiff, (2) Plaintiff's allegations that women were excluded from the emergency response team, (3) Sabor's statements to Plaintiff and others that he prefers working with Latina officers, (4) Plaintiff's alleged inability to obtain training for a Central Control position, and (5) Plaintiff's allegation that African American officers are not given the opportunity to work for the SID.

Plaintiff's Title VII claims fail at the outset as to the Individual Defendants in their individual capacities. The Third Circuit, like a clear majority of courts, has held that there is no individual liability under Title VII. *Sheridan v. E .I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996) (quoting 42 U.S.C. § 2000(e)–2(a)). Further, Plaintiff has failed to produce evidence in support of her Title VII claims against the DOC, Northern State Prison, and the Individual Defendants in their official capacities.

#### i. Race and Gender Discrimination

Plaintiff alleges that she and other African American female officers were denied opportunities in the Central Control office and the SID based on their race. She further alleges she was not assigned to the emergency response team due to her gender. The

prima facie elements of a Title VII discrimination claim are: (1) the plaintiff is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

Plaintiff has produced nothing indicating that being denied an opportunity in the Central Control office is an adverse employment action. Rather, she admitted that working in Central Control is not a promotion from her current position. *Pagan v. Holder*, 741 F. Supp. 2d 687, 697 (D.N.J. 2010) *aff'd sub nom. Pagan v. Gonzalez*, 430 F. App'x 170 (3d Cir. 2011) (granting summary judgment on Title VII discrimination claims, due to a lack of "evidence that Plaintiff's work suffered as a result of her lack of training as a personal trainer or that such training was necessary for advancement in status or pay"). Additionally, as to her allegations about the SID and the emergency response team, Plaintiff has failed to produce evidence supporting an inference of intentional discrimination. Plaintiff's own testimony indicates that African American officers, and specifically African American female officers, hold SID positions. And Plaintiff testified that she never requested to be a member of the emergency response team and that female officers have been assigned to that team. Thus, the Court will grant Defendant's motion for summary judgment on Plaintiff's Title VII discrimination claims.

### ii. Hostile Work Environment

Plaintiff next asserts a hostile work environment claim based on Defendant Brown's use of the word "bitch" and Defendant Sabor's comments about preferring Latina women. To establish a hostile work environment claim under Title VII, a plaintiff must establish that: (1) she suffered intentional discrimination because of her race or gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same race or gender; and (5) there is a basis for employer liability. *See Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007). When determining whether the discrimination is severe or pervasive, a court should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Simple teasing, offhand comments, and isolated incidents – unless extremely serious – are not enough. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)

No reasonable juror could find that Plaintiff suffered severe or pervasive discrimination based on the isolated incidents that Plaintiff describes. The Court will thus grant Defendants' motion for summary judgment on Plaintiff's Title VII hostile work environment claims.

### C.  Section 1981 Claim

Plaintiff also asserts a Section 1981 claim.  Her Section 1981 claim is based on her suspension for insubordination and her allegation that Defendants refused to provide her with training opportunities that were freely offered to her white and Latina co-workers.  Because Plaintiff has waived all claims related to her suspension under the Settlement Agreement, the discussion below concerns only to the alleged denial of training opportunities.

Section 1981 does not permit a private cause of action against state actors such as the DOC and Northern State Prison.  *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989); *see also Frazier v. Pennsylvania*, No. 09- 0438, 2009 WL 4937557, at *1 (M.D. Pa. Dec. 14, 2009) (dismissing Section 1981 claims against the Pennsylvania Department of Corrections and the State Correctional Institute at Camp Hill).  Additionally, suits against public officials in their official capacities are construed as suits against the public entity.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  Therefore, Plaintiff does not have a viable claim against the DOC, Northern State Prison, or Individual Defendants in their official capacities.

Further, Plaintiff has failed to produce evidence in support of her Section 1981 claim against Individual Defendants in their individual capacities.  Section 1981 provides, in part, that every citizen has the same right to make and enforce contracts as white citizens.  The right to contract protected by the statute includes protection from discrimination in employment contracts.  *See Walker v. Abbott Lab.*, 340 F.3d 471, 476 (7th Cir. 2003); *Estate of Oliva v. New Jersey*, 579 F. Supp. 2d 643 (D.N.J. 2008).  The elements of a discrimination claim under section 1981 are identical to the elements of an employment discrimination claim under Title VII.  *See Trent v. Test Am., Inc.*, 559 F. App'x 180, 182 (3d Cir. 2014).  Thus, the Court's Title VII analysis applies equally to this claim.

### D.  Section 1983 Claim

Finally, the Amended Complaint asserts a claim under Section 1983 based on incidents related to Plaintiff's suspension for insubordination.  Am. Compl. ¶¶ 61-68.  As explained previously, Plaintiff has waived all claims based on those incidents under the Settlement Agreement.  Moreover, Plaintiff cannot assert a Section 1983 claim against the DOC, Northern State Prison, or Individual Defendants in their official capacities.  Neither states, nor their departments and agencies, nor state officials sued in their official capacities for money damages are "persons" within the meaning of Section 1983.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 70-71, n.10 (1989); *Grabow v. Southern State Correctional Facility*, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (finding that the DOC is not a person under Section 1983).  The Court will grant summary judgment for Defendants on Plaintiff's Section 1983 claim.

### E. Supplemental Jurisdiction Over State Law Claims

Having granted summary judgment to Defendants on all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. *Clements v. Hous. Auth. of the Borough of Princeton*, 532 F. Supp. 2d 700, 713 (D.N.J. 2007) (citing 28 U.S.C. § 1367(c)). Under 28 U.S.C. § 1367(d), the period of limitations shall be tolled for the time Plaintiff's state law claims were pending with this Court and a period of 30 days after Plaintiff's state law claims are dismissed, unless New Jersey law provides for a longer tolling period.

### IV. CONCLUSION

For the above reasons, Defendants' motion for summary judgment is **GRANTED**. All federal claims – including Plaintiff's Title VII, Section 1981, and Section 1983 claims – are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** and may be reasserted in state court. An appropriate order follows.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 28, 2015**